IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAYAM JAHANGIRI, et al.                    :

                                            :

    v.                                      :   Civil Action No. DKC 23-2722

                                            :

ANTONY J. BLINKEN, in his                  :
official capacity as Secretary             :
of State, et al.                           :

                                            :

**MEMORANDUM OPINION**

Several motions are presently pending and ready for resolution in this visa processing case.  For the reasons that follow, the motion for extension of time to respond to the complaint filed by Defendants Antony Blinken, Rena Bitter, and Nancy Abella (collectively, "Defendants"), (ECF No. 11), will be granted; the motion for temporary restraining order filed by Plaintiffs Payam Jahangiri and Farnoosh Amani (collectively, "Plaintiffs"), (ECF No. 13), will be denied; Defendants' motion to dismiss for lack of subject matter jurisdiction, (ECF No. 14), will be denied, but the motion to dismiss for failure to state a claim, (*id.*), will be granted; and Defendants' motion for extension of time to file a reply to Plaintiffs' opposition to the motion to dismiss, (ECF No. 16), will be denied as moot.  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.

I.    **Background**

A. **Fiancé(e) Visas**

A K-1 visa, also known as a fiancé(e) visa, is a temporary nonimmigrant visa that allows a foreign national to travel to the United States to marry a United States citizen and then file for adjustment of status to permanent residency. 8 U.S.C. §1101(a)(15)(K).  To obtain a K-1 visa, the U.S.-citizen fiancé(e) must submit a Form I-129F Petition for Alien Fiancé(e) to United States Citizenship and Immigration Services ("USCIS").  *I-129F, Petition for Alien Fiancé(e)*, U.S. Citizenship and Immigration Services (Apr. 1, 2024), https://perma.cc/SES6-KKH4.  If USCIS determines that the foreign fiancé(e) is eligible for a K-1 visa, it sends the petition to the Department of State's National Visa Center ("NVC").  *Nonimmigrant Visa for a Fianc(é)e (K-1)*, U.S. Department of State—Bureau of Consular Affairs (last visited Apr. 15, 2024), https://perma.cc/ALR3-7ZEH.  The foreign fiancé(e) must apply for the K-1 visa by submitting a DS-160 Online Nonimmigrant Visa Application, filing supporting documentation, completing a medical examination, and paying the applicable fees. *Id.*  The DS-160 application is then sent to the applicable United States embassy or consulate, where a consular officer will interview the foreign fiancé(e).  *Id.*

Once a visa application has been completed properly, "the consular officer must issue the visa, refuse the visa under

2

§ 221(a) or (g) of the U.S. Immigration and Nationality Act or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 42.81(a). If a consular officer determines that additional information is required from an applicant or that an Advisory Opinion—known as "administrative processing"—is necessary to determine an applicant's eligibility, the officer must deny the application under § 221(g) of the Immigration and Nationality Act ("INA"), pending future consideration once additional information is received or administrative processing is concluded. *See* 9 FAM 504.11-3(B)(2)(a); 22 C.F.R. § 42.81(b). An application undergoing administrative processing must be reconsidered if "within one year from the date of refusal [the applicant] adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based[.]" 22 C.F.R. § 42.81(e).

**B. Factual History[1]**

Plaintiff Payam Jahangiri ("Mr. Jahangiri"), a United States citizen, filed a Form I-129F Petition for Alien Fiancé(e) on behalf of his fiancé, Plaintiff Farnoosh Amani ("Ms. Amani"), an Iranian national. (ECF No. 1 ¶¶ 78, 79). USCIS received the petition on May 24, 2021. (*Id.* ¶ 84). The I-129F petition was approved on July 13, 2022 and forwarded to the U.S. Embassy in Ankara, Turkey.

---

[1]   These facts are alleged in Plaintiffs' complaint and construed in the light most favorable to them.

(*Id.* ¶¶ 86, 88).   Plaintiffs paid the visa processing fees and timely submitted the DS-160 Online Nonimmigrant Visa Application along with the supporting documentation to the NVC.   (*Id.* ¶ 90). On November 17, 2022, Ms. Amani attended her interview at the consular section in the U.S. Embassy in Ankara.  (*Id.* ¶ 91).  After the interview, Ms. Amani was informed that although there were no documents missing from her file, her application would have to undergo mandatory administrative processing.   (*Id.* ¶ 92).   The consular officer gave her a temporary refusal letter pursuant to INA § 221(g) which stated that her "visa application was temporarily refused under section 221(g)," "this refusal may be overcome once the missing documentation and/or administrative processing is completed," and "you will be contacted by the Embassy once the processing is complete."  (*Id.*).  Also on November 17, 2022, the Embassy sent Mr. Jahangiri a Form DS-5535 Supplemental Questions for Visa Applicants, which requested that he submit 15 years of detailed history including addresses, employment, travel, and social media handles.  (*Id.* ¶ 93).  Mr. Jahangiri completed and submitted his detailed response to the questionnaire.  (*Id.*). Plaintiffs have inquired as to the status of the application multiple times.  (*Id.* ¶ 97).  Since the interview, the Embassy has not requested any additional documents, and Ms. Amani's application remains refused pending administrative processing. (*Id.* ¶¶ 96-99).

Almost 11 months after Ms. Amani attended her interview and learned her petition was refused, Plaintiffs filed a petition for writ of mandamus and complaint for declaratory and injunctive relief (the "complaint") on October 9, 2023. (ECF No. 1). As of the filing of this opinion, approximately 17 months have passed. Plaintiffs seek an order compelling Defendants to adjudicate Ms. Amani's visa application under the Mandamus Act, 28 U.S.C. § 1361. They also allege that Defendants unlawfully withheld Ms. Amani's visa application, unlawfully withheld a mandatory entitlement owed to them, and unreasonably delayed adjudication of Ms. Amani's visa petition under §§ 706(1)-(2) of the Administrative Procedure Act, 5 U.S.C. 500 *et seq.* ("APA").

## II. **Analysis**

### A. **Extension of Time to Respond to the Complaint**

Defendants' original deadline to respond to the complaint was December 18, 2023. (ECF No. 4). The court granted Defendants' first motion for extension of time to respond to the complaint to January 9, 2024 (ECF No. 10). On January 9, 2024, Defendants filed a second motion for extension of time to respond, seeking an extension to January 19, 2024. (ECF No. 11). Because Defendants filed their motion "before the original time or its extension expire[d]," they must show "good cause" for the extension. Fed.R.Civ.P. 6(b)(1)(a). They need not make the more stringent

"excusable neglect" showing required when a party files a motion

after the time to do so has expired.   Fed.R.Civ.P. 6(b)(1)(b).

Defendants requested the extension because:

> The schedule of undersigned counsel, including
> the competing demands of her other cases, will
> make it difficult for Defendants to file their
> intended motion to dismiss by the current
> deadline.   Additionally, undersigned counsel
> is awaiting additional information from the
> Department of State that is needed for
> Defendants' motion to dismiss.

(ECF No. 11 ¶ 4).

Plaintiffs opposed Defendants' motion for extension of time

because Defendants failed to comply with Local Rule 105.9.   (ECF

No. 12).   Local Rule 105.9 provides:

> Before filing a motion to postpone any
> proceeding or to extend the time for the
> filing of any document or the taking of any
> other required action, counsel shall attempt
> to obtain the consent of other counsel and
> shall give notice of the motion to other
> counsel a reasonable time before presentation
> of the motion to the Court.

Defendants asserted in their motion for extension of time that

they did not request Plaintiffs' consent because Plaintiffs

refused to consent to their first motion for extension of time.

(ECF No. 11 ¶ 5).

This is much ado about close to nothing.   First, it is folly

to oppose a brief extension request sought by the Government

because complaining about untimely filing by the Government gets

nowhere.   There would be no entry of default-or default judgment-

against Defendants even if they failed to respond timely.  *See* Fed.R.Civ.P. 55(d); *Ashby v. United States Department of State*, No: 1:18-cv-614, 2019 WL 4451256, at *3 (M.D.N.C. Sept. 17, 2019) (citing cases holding that judgment against the United States will not be based simply on a failure to file a responsive pleading and that an entry of default would be set aside if the government appears later and files a responsive pleading).  Second, not even our local rules require the taking of a futile action.[2]  Explicitly asking opposing parties for consent is not productive when their litigating position is well known.  Here, Plaintiffs opposed an earlier motion and sought immediate injunctive relief, making clear that consent would not be forthcoming.  Defendants stated as much in their motion.  Finally, Defendants have shown good cause for the extension.  They asserted that they were awaiting information from the Department of State needed to file the motion to dismiss, and that competing demands from counsel's other cases will make it difficult to file their motion to dismiss on time.  Accordingly, Defendants' motion for extension of time to respond to the complaint will be granted.  Thus, Defendants' motion to dismiss, filed on January 19, 2024, is timely.  (ECF No. 14).

---

[2] Judge Bredar, *sua sponte*, suspended the operation of this local rule.  *See Erie Ins. Co. v. Bluegrass Materials Co., LLC*, No. 21-cv-02562-JKB, 2022 WL 562937, at *5 (D.Md. Feb. 24, 2022).

B. **Extension of Time to Respond to the Opposition to the Motion to Dismiss**

Because Plaintiffs filed their opposition to Defendants' motion to dismiss on February 2, 2024, (ECF No. 15), Defendants' reply was due on February 16, 2024, Local Rule 105.2(a).  On February 16, 2024, Defendants filed a motion for extension of time to file their reply, seeking an extension to February 23, 2024. (ECF No. 16).  The court never ruled on that motion.  On February 23, 2024, Defendants filed another motion for extension of time to file their reply, this time seeking an extension to March 8, 2024. (ECF No. 17).  The court granted the second motion in part, extending their deadline to March 1, 2024, and noting that no further extensions would be entertained. (ECF No. 18).  Defendants complied with the court's order, filing their reply on March 1, 2024. (ECF No. 19).  Because the court granted in part Defendants' second motion for extension of time, the first motion will be denied as moot.

C. **Motion to Dismiss**

1. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'"  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12.30[1] (3d ed. 1998)).  A plaintiff bears the

burden of proving that subject matter jurisdiction properly exists in the federal court. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.

### a. Mootness

Defendants contend the case is moot because the consular officer issued a final visa refusal. (ECF No. 14-1, at 8-10). They argue that Plaintiffs' only recourse is to await reconsideration of their application after administrative processing is complete. (*Id.* at 10). Plaintiffs respond that their claims are not moot because a refusal that can be overcome by either applicant or agency action cannot be deemed final. (ECF No. 15, at 10). They assert that no final decision has been reached because their visa application is still pending administrative processing, (*id.* at 11-14), which they describe as a "quasi-refusal" and "an intermediate status where the visa application remains pending until a consular officer can make a final determination regarding visa eligibility[,]" (*id.* at 13). Defendants reply that the consular officer's decision remains final unless superseded by another decision, and a refusal under INA § 221(g) is not a temporary denial. (ECF No. 19, at 2).

Defendants cite six cases holding that actions requesting adjudication of a visa petition are moot. (ECF No. 14-1, at 8-9). Each is distinguishable. First, in *Alkady v. Luna*, No. 1:18-cv-1-TLS, 2019 WL 984233 (N.D.Ind. Feb. 28, 2019), *aff'd*, 803 F.App'x 932 (7th Cir. 2020), the plaintiffs did not dispute that the government's adjudication of their visas was final; rather, they argued that Defendants' notice was inadequate. *Alkady*, 2019 WL 984233, at *3. Second, in *Martinez v. Mayorkas*, No. 1:13-cv-485-MRB, 2014 WL 4908447 (S.D.Ohio Sept. 30, 2014), the court found the claims moot because USCIS re-interviewed the plaintiffs and denied their petitions after they filed the case. *Martinez*, 2014 WL 4908447, at *1. Third, in *Mufti v. Lynch*, 190 F.Supp.3d 827 (N.D.Ind. 2016), the court determined the plaintiff's claims were moot because the consular officer issued the requested visa. *Mufti*, 190 F.Supp.3d at 833. Fourth, in *Lihua Jiang v. Clinton*, No. 08-cv-4477-NGG, 2011 WL 5983353 (E.D.N.Y. Nov. 28, 2011), the court found the plaintiff's claim moot because the DHS approved her application to arrange a visa for her son and the consulate denied her son's visa request. *Lihua*, 2011 WL 5983353, at *3. Fifth, in *Hong Lin Zhou v. Chertoff*, No. 08-cv-4523-RMW, 2009 WL 2246231 (N.D.Cal. July 24, 2009), the court concluded that it had jurisdiction to order a consular official to take action on a visa application, but denied the plaintiff's request for mandamus relief as moot because, although the plaintiff

had requested reconsideration his daughter's visa petition, the petition had been formally denied. *Hong*, 2009 WL 2246231, at *2. Sixth, in *Svensborn v. Keisler*, No. 07-cv-5003-TEH, 2007 WL 3342751 (N.D.Cal. Nov. 7, 2007), the court distinguished the case from others in which no decision had been made, determining that, although the plaintiff had requested reconsideration, there was no dispute that the plaintiff's application was refused. *Svensborn*, 2007 WL 3342751, at *4.

None of Defendants' cases involve a petition that underwent administrative processing.  Moreover, *Lihua* and *Svensborn* are inapt because, here, Plaintiffs did not request reconsideration of a final decision; rather, their application is undergoing administrative processing.  Finally, none of Defendants' cases involve delayed adjudication of a K-1 visa, and none were issued by a court in the United States Court of Appeals for the District of Columbia Circuit, the circuit most familiar with this type of action.

Courts that addressed mootness in the context of K-1 visa administrative processing have determined that the action is not moot. *See, e.g.*, *Ramirez v. Blinken*, 594 F.Supp.3d 76, 87 (D.D.C. 2022) (holding that plaintiffs' claims are not moot because refusals of K-1 visa petitions for administrative processing "do not constitute a final adjudication of the visa application[]"); *Mirbaha v. Pompeo*, 513 F.Supp.3d 179, 184 (D.D.C. 2021) (finding

11

that the claims are not moot because "Plaintiffs do not seek to challenge the original decision to refuse [plaintiff's] visa, they seek to compel the processing of his waiver request, which would clear the way for his visa application to be granted[]" and thus, an order from the court would affect the parties' rights); *Bagherian v. Pompeo*, 442 F.Supp.3d 87, 93 (D.D.C. 2020) (holding that plaintiffs' claims are not moot because an order that the government must adjudicate the plaintiff's waiver eligibility for a K-1 visa has a "more than speculative chance of affecting [plaintiff's] legal rights").  Additionally, many courts have reached the merits of claims alleging unreasonable delay and unlawful withholding of K-1 visa without addressing mootness at all.  *See, e.g.*, *Mohammad v. Blinken*, 548 F.Supp.3d 159 (D.D.C. 2021); *Murway v. Blinken*, No. 21-cv-1618-RJL, 2022 WL 493082 (D.D.C. Feb. 16, 2022); *Lee v. Blinken*, No. 23-cv-1783-DLF, 2024 WL 639635 (D.D.C. Feb. 15, 2024); *Khan v. Blinken*, No. 21-cv-1683-JEB, 2021 WL 5356267 (D.D.C. Nov. 17, 2021); *Jaraba v. Blinken*, 568 F.Supp.3d 720 (W.D.Tex. 2021); *Schwartz v. United States Dep't of Homeland Sec.*, No. 21-cv-378-JEB, 2021 WL 4133618 (D.D.C. Sept. 10, 2021); *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807-DLF, 2022 WL 424983 (D.D.C. Feb. 11, 2022).  Plaintiffs' claims are not moot because they do not challenge the original refusal of their petition, but rather seek an order compelling Defendants to adjudicate their visa petition.  Such an order has a "more than

speculative chance of affecting [Plaintiffs'] legal rights."
*Bagherian*, 442 F.Supp.3d at 93.

### b. Justiciability

Defendants assert that this case is not justiciable under the
consular nonreviewability doctrine.  (ECF No. 14-1, at 10-13).
Plaintiffs agree that a consular official's decision to grant or
deny a visa is not subject to judicial review but argue that
actions alleging delay in adjudication are justiciable under the
APA and Mandamus Act.  (ECF No. 15, at 15-21).

The doctrine of consular nonreviewability "instructs that
ordinarily, 'it is not within the province of any court, unless
expressly authorized by law, to review the determination of the
political branch of the Government to exclude a given alien.'"
*Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (quoting
*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543
(1950)).

Defendants identify two cases that held that the doctrine of
consular nonreviewability applies where a plaintiff seeks to
compel an official to adjudicate a visa application.  (ECF No. 14-
1, at 12) (citing *Abdo v. Tillerson*, No. 17-cv-7519-PGG, 2019 WL
464819, at *3 (S.D.N.Y. Feb. 5, 2019) (noting that other circuits
recognize a distinction between challenging a decision and
compelling adjudication of a visa application, but finding that it
lacks subject matter jurisdiction because the Second Circuit

applies the doctrine of consular nonreviewability not only when a plaintiff challenges a decision but also when he or she seeks to compel adjudication); *OC Modeling, LLC v. Pompeo*, No. 20-cv-1687-PA, 2020 WL 7263278, at *3 (C.D.Cal. Oct. 7, 2020)) (holding that because the consular office refused plaintiff's temporary work nonimmigrant visa application under INA § 221(g), the court lacks subject matter jurisdiction under the consular nonreviewability doctrine).

A majority of courts, however, have held that the doctrine of consular nonreviewability does not bar claims to compel adjudication of a visa petition undergoing administrative processing. *See, e.g.*, *Giliana v. Blinken*, 596 F.Supp.3d 13, 18-19 (D.D.C. 2022), *appeal dismissed*, No. 22-5108, 2022 WL 16842251 (D.C. Cir. Nov. 9, 2022), *reh'g denied*, No. 22-5108, 2022 WL 17722855 (D.C. Cir. Dec. 13, 2022) (quoting *Ibrahim v. U.S. Dep't of State*, No. 19-cv-610-BAH, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020)) (determining that the consular nonreviewability doctrine does not apply because "courts have consistently held that when an 'application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final, and thus claims alleging unreasonable delay while a case remains suspended in administrative processing are not barred by the doctrine of consular nonreviewability[]'"); *Lee*, 2024 WL 639635, at *3 (quoting *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617

F.Supp.3d 1, 11 (D.D.C. 2022)) (holding that the consular nonreviewability doctrine does not apply where a refusal is entered for administrative processing because the doctrine "applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision[]"); *Bagherian*, 442 F.Supp.3d at 92-93 (quoting *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F.Supp.3d 268, 290 (D.D.C. 2016)) (holding that the consular nonreviewability doctrine does not apply to an action seeking to compel adjudication because it "is not triggered until a consular officer has made a decision with respect to a particular visa application[]").  The doctrine of consular nonreviewability thus does not bar this suit.

### 2. Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss the complaint for failure to state a claim under Rule 12(b)(6).  "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873

(4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Defendants attached a declaration to their motion to dismiss but, for the most part, it merely repeats facts alleged in the complaint.  The only possible additional fact recited in the declaration is to note explicitly that "the additional security screening is ongoing, and Ms. AMANI's visa application remains refused under INA § 221(g), 8 U.S.C. § 1201(g)."  (ECF No. 14-2, at 4).  It is not necessary to consider the declaration in resolving this aspect of Defendants' motion.

There are four counts in the complaint, entitled Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief, all proceeding from what Plaintiffs contend is an unreasonable delay in adjudicating the visa request.  Plaintiffs bring Count One under the Mandamus Act, 28 U.S.C. § 1361.  (ECF No. 1 ¶¶ 128-146).  Counts Two, Three, and Four are brought under

16

the APA.  In Count Two, Plaintiffs allege Defendants unlawfully withheld Ms. Amani's visa application under 5 U.S.C. § 706(2). (*Id.* ¶¶ 147-162).  In Count Three, they allege Defendants unlawfully withheld a mandatory entitlement owed to Plaintiffs under 5 U.S.C. § 706(1).  (*Id.* ¶¶ 163-174).  In Count Four, they allege Defendants unreasonably delayed adjudication of Ms. Amani's visa petition under 5 U.S.C. § 706(1).  (*Id.* ¶¶ 175-190).  Count Four will be addressed first because its resolution will inform disposition of the remaining claims.

### a. Count Four: Unreasonably Delayed Adjudication

Plaintiffs allege that Defendants unreasonably delayed adjudication of Ms. Amani's visa application under 5 U.S.C. § 706(1).  (*Id.* ¶¶ 175-190).  Defendants assert that "there is no statutory deadline under federal law by which a consular office must adjudicate or reconsider a visa application that would potentially give rise to an APA violation[]" and a delay of 14 months (now 17 months) is not unreasonable.  (ECF No. 14-1, at 13, 15).  Plaintiffs respond that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation."  (ECF No. 15, at 22).

Section 555(b) of the APA requires that agencies "within a reasonable time[] . . . shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  If an agency fails to do so, courts may "compel agency action . . . unreasonably

delayed[.]" 5 U.S.C. § 706(1). To determine whether Plaintiffs sufficiently stated a claim that Defendants unreasonably delayed adjudication of Ms. Amani's visa application, the court will consider the six factors laid out by the D.C. Circuit in *Telecommunications Rsch. & Action Ctr. V. F.C.C.* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations and citation marks omitted).

Defendants argue that Plaintiffs have failed to plead sufficient allegations under the *TRAC* factors, and they proceed to evaluate those factors based on the meager facts alleged and with reference to other cases. Plaintiffs contend that it would be premature for the court to assess whether the agency's delay was unreasonable at this stage in the proceedings. (ECF No. 15, at

22).  Plaintiffs, however, fail to appreciate that they must, at the threshold, plead enough facts-and not merely legal conclusions-to make each claim plausible.

Judge Coulson addressed a similar argument in *Begum v. United States Dep't of State*, No. 1:22-cv-00478-JMC, 2022 WL 16575703 (D.Md. Oct. 31, 2022).  There, the defendants filed a motion to dismiss or, in the alternative, for summary judgment and attached a declaration by a Department of State "employee stating that there is currently no availability for Plaintiff's visa application interview." *Begum*, 2022 WL 16575703, at *6 n.6.  Judge Coulson construed the motion as a motion to dismiss, declined to consider the declaration, and addressed the *TRAC* factors.  He explained:

> Like Defendants here, the defendants in *Ahmed* [*v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893-APM, 2022 WL 424967 (D.D.C. Feb. 11, 2022)] supported their motion with a declaration by a DOS official explaining the alleged reasons for the delay.  Although other courts have considered such evidence in connection with motions to dismiss, the court in *Ahmed* declined to do so in light of "the D.C. Circuit's instruction that the unreasonable-delay analysis under *TRAC* is a fact-intensive inquiry."  *Ahmed*, 2022 WL 424967, at *4 (other citations omitted).  Although the court refused to take judicial notice of the defendants' ostensible explanation for the delay, the court proceeded to apply the *TRAC* factors.  *Id.*  Refusing to consider such evidence and declining to convert the motion into one for summary judgment is "not to say that a plaintiff automatically survives a motion to dismiss by merely alleging that a processing delay is unreasonable."  *Id.* at *5.  "A plaintiff in

19

> such a case is still subject to the standard
> for pleadings under *Twombly* and *Iqbal*." *Id.*
> Therefore, the Court must determine "whether
> [Plaintiff's] complaint has alleged facts
> sufficient to state a plausible claim for
> unreasonable administrative delay." *Id.*
> (other citation omitted).

*Begum*, 2022 WL 16575703, at *6; *see also Dennis v. Blinken*, No. 1:22-cv-02522-JRR, 2023 WL 4764576, at *5 (D.Md. July 26, 2023) (following the *Begum* court's approach).

In cases alleging unreasonable delay in adjudication of a K-1 visa, many courts have found it appropriate to analyze the *TRAC* factors even on a motion to dismiss. *See, e.g.*, *Lee*, 2024 WL 639635, at *4 (noting that "it is not premature to adjudicate [plaintiffs'] unreasonable-delay claim at the motion-to-dismiss stage" and "[c]ourts in this district have routinely decided whether an agency's delay is unreasonable when processing claims at the motion-to-dismiss stage[]"); *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376-RC, 2021 WL 4191958, at *4 (D.D.C. Sept. 15, 2021) (quoting *Sarlak v. Pompeo*, No. 20-cv-35-BAH, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)) (noting that the *TRAC* "factors have been employed at the motion to dismiss stage" when "the 'record contains enough facts to evaluate [them]'"); *see also Jaraba*, 568 F.Supp.3d at 735-40 (applying the *TRAC* factors); *Ramirez*, 594 F.Supp.3d at 90-95 (same); *Penn v. Blinken,* No. 21-cv-1055-TJK, 2022 WL 910525, at *5-7 (D.D.C. Mar. 29, 2022) (same); *Bagherian*, 442 F.Supp.3d at 94-96 (same); *Murway*, 2022 WL 493082,

at *2-5 (same); *Schwartz*, 2021 WL 4133618, at *2-4 (same); *Milligan v. Blinken*, No. 20-cv-2631-JEB, 2021 WL 3931880, at *7-9 (D.D.C. Sept. 2, 2021) (same); *Khan*, 2021 WL 5356267, at *2-4 (same); *Primeaux v. U.S. Dep't of Homeland Sec.*, No. 21-cv-480-FYP, 2021 WL 4940938, at *2-4 (D.D.C. Oct. 22, 2021) (same); *Giliana*, 596 F.Supp.3d at 19-22 (same); *Mirbaha*, 513 F.Supp.3d at 184-186 (same); *Yacoub v. Blinken*, No. 21-cv-983-TSC, 2022 WL 4598681, at *4-6 (D.D.C. Sept. 30, 2022) (same).

### i. *TRAC* Factors One and Two

The first two *TRAC* factors focus on "'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale.'" *Dennis*, 2023 WL 4764576, at *5 (quoting *Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F.Supp.3d 295, 300 (D.D.C. 2014)); *see also Begum*, 2022 WL 16575703, at *7 (explaining that the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question"). Courts generally consider the first and second *TRAC* factors together. *Dennis*, 2023 WL 4764576, at *5 (quoting *Arab v. Blinken*, 600 F.Supp.3d 59, 69 (D.D.C. 2022)); *Begum*, 2022 WL 16575703, at *7 (quoting *Arab*, 600 F.Supp.3d at 69).

"Whether the State Department has a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months

or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Milligan v. Pompeo*, 502 F.Supp.3d 302, 317-18 (D.D.C. 2020) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

Plaintiffs contend that the rule of reason guiding Defendants' adjudication of fiancée visa petitions is "the validity period of the fiancée petition[,]" which is four months. (ECF No. 13-1, at 2, 8) (citing 8 C.F.R. § 214.2(k)(5)). To the contrary, "'[t]here is no congressional[ly] imposed timeline' for processing K-1 visa applications." *Mohammad*, 548 F.Supp.3d at 165 (quoting *Bagherian*, 442 F.Supp.3d at 95); *see also Brzezinski*, 2021 WL 4191958, at *5. Indeed, "'Congress has given the agencies wide discretion in the area of immigration processing.'" *Brzezinski*, 2021 WL 4191958, at *5 (quoting *Skalka v. Kelly*, 246 F.Supp.3d 147, 153-54 (D.D.C. 2017)).

"In the absence of a congressionally supplied timeframe, courts typically look to case law for guidance." *Id.* (citing *Sarlak*, 2020 WL 3082018, at *6. None of the cases Plaintiffs cite involve processing of a K-1 visa and all are inapposite for various reasons. First, Plaintiffs cite *American Academy of Religion v. Chertoff*, 463 F.Supp.2d 400 (S.D.N.Y. 2006), which held that a

nine-month delay in processing a nonimmigrant B visa petition was unreasonable.  *Am. Acad. of Religion*, 463 F.Supp.2d at 407, 421-23.  In *American Academy of Religion*, however, the court determined that the delay was unreasonable because the "Department of State's own website indicates that most nonimmigrant visas submitted to the Bern Embassy are processed within 2 days of application," and because the Government had previously granted the plaintiff, a well-known Islamic scholar, an H-1B visa to assume a tenured professorship at the University of Notre Dame and then revoked it a week before he was scheduled to move, all during the Iraq War and related wave of Islamophobia.  *Id.* at 421.  None of the factors the *American Academy of Religion* court found relevant exist here.

Second, Plaintiffs cite *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-01388-TSC, 2019 WL 367841, at *7, *11 (D.D.C. Jan. 30, 2019), which held that the plaintiffs could use a nine-month Special Immigrant Visa application deadline "as a benchmark to assess whether the current delays are unreasonable[.]"  There, however, a judge had previously ruled that the deadline was non-discretionary, and the case, brought by Iraqi and Afghan nationals who assisted the United States military operations in Iraq and Afghanistan and faced a serious threat to their lives in their home countries, involved a level of urgency not present here.  *Id.* at *1, *7.

Finally, Plaintiffs cite *Doe v. Risch*, 398 F.Supp.3d 647 (N.D.Cal. 2019) and *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), which held that delays of two-and-a-half years and eight years respectively were unreasonable. *Doe*, 398 F.Supp.3d at 656-67; *Patel*, 134 F.3d at 933. A delay of 17 months, however, does not raise the same level of concern as the longer delays in these cases. Furthermore, in *Doe*, the delay stemmed from a stalled FBI background check, which courts had held to be unreasonable as a matter of law. *Doe*, 398 F.Supp.3d at 657. In *Patel*, the Immigration and Naturalization Service ("INS") suspected that the plaintiff had naturalized under false pretenses by marrying an American citizen while still being married to his wife in India, and falsely informed the consulate that denaturalization proceedings had begun. The consulate delayed processing the plaintiffs' application to await a denaturalization decision. *Patel*, 134 F.3d at 931. None of these circumstances are present here.

Moreover, "'[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Begum*, 2022 WL 16575703, at *7 (quoting *Sarklak*, 2020 WL 3082018, at *6). Courts have found that delays in adjudicating a K-1 visa of 17 months and longer were not unreasonable. *See, e.g.*, *Penn*, 2022 WL 910525, at *6 (holding

that a 22-month delay in the adjudication of K-1 visas during the COVID-19 pandemic was not unreasonable); *Murway*, 2022 WL 493082, at *3 (finding 22-month delay in the adjudication of a K-1 visa during the COVID-19 pandemic was not unreasonable); *Brzezinski*, 2021 WL 4191958, at *5 (holding that a 17-month delay in the adjudication of a K-1 visa was not unreasonable).

As to the second *TRAC* factor, Plaintiffs point to two authorities which they argue provide "a timetable or other indication of the speed with which Congress expects the agency to proceed[.]" (ECF No. 13-1, at 10). First, the Consolidated Appropriations Act provides:

> It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K-1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

Pub. L. No. 106-113, § 237(a), 113 Stat. 1501 (1999). Second, 8 U.S.C. § 1571(b) provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b); *see also* American Competitiveness in the Twenty-First Century Act of 2000-Immigration Services and

Infrastructure Improvements Act of 2000, Pub. L. 106-313, 114 Stat. 1251.

Numerous courts have found that the 30-day policy preference in the Consolidated Appropriations Act "did not mandate a statutory deadline for K-1 visa adjudications." *Milligan*, 502 F.Supp.3d at 318; *see also Lee*, WL 639635, at *6 (determining that the 30-day policy is "aspirational, not mandatory[]"); *Jaraba*, 568 F.Supp.3d at 737 (agreeing with defendants that the 30-day policy merely expresses a goal to which the State Department strives and does not create a deadline).

Courts have generally found that the sense of Congress language in 8 U.S.C. § 1571(b) does not establish a 180-day timetable because it does not apply to the Department of State, and even if it provides an indication of the speed at which Congress expects the Department to adjudicate K-1 visa petitions, it is nonbinding. *See, e.g.*, *Lee*, 2024 WL 639635, at *6 (finding that even if § 1571(b) adds some weight in plaintiffs' favor on the second *TRAC* factor, the factor still favors defendants because § 1571(b) applies to INS, not the Department of State, and governs immigration benefit applications, not nonimmigrant K-1 visa petitions); *Murway*, 2022 WL 493082, at *2 n.2 (noting that § 1571(b) is not mandatory and does not provide a timeline, but even if it did offer a relevant expectation, it applies to the processing of immigrant benefit applications by the USCIS, not

consular officials at the Department of State); *Mohammad*, 548 F.Supp.3d at 167 (quoting *Palakuru v. Renaud*, 521 F.Supp.3d 46, 51 (D.D.C. 2021)) (determining that even if § 1571(b) offered an indication of the speed with which Congress expects the agency to proceed, "a sense of Congress resolution is not law[]" and is "best interpreted as nonbinding").

Apart from citing the Consolidated Appropriations Act and 8 U.S.C. § 1571(b) for the contention that Congress indicated they expect the agency to proceed within 30 days or 180 days respectively, Plaintiffs offer "no other facts that would allow this [c]ourt to measure the reasonability of the Government's delay." *Begum*, 2022 WL 16575703, at *8 (quoting *Ahmed*, 2022 WL 424967, at *5). Plaintiffs have not pointed to anything specific about Ms. Amani's visa application "to distinguish it from the multitude of similar cases." *Id.* (citing *Shen v. Pompeo*, No. 20-cv-1263-ABJ, 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (concluding that the first and second factors favor the government where the plaintiff "points to no authority for the proposition that the F-1 student visa is so highly time-sensitive . . . [that] this case is distinguishable[] from other immigration cases") (internal quotation marks and citation omitted); *Dastagir v. Blinken*, 557 F.Supp.3d 160, 166 (D.D.C. 2021) (discussing but ultimately dismissing plaintiff's argument that, based on statistics as to the average time of adjudicating a visa

application, her visa should take less time to adjudicate)).  Nor have they "offered any evidence indicating that Defendants have treated [Ms. Amani] differently from other applicants, such as pointing to similarly situated applicants whose applications were adjudicated in a shorter amount of time."  *Id.* (citing *Mashpee*, 336 F.3d at 1100 (suggesting that courts should not grant relief where there is "no evidence the agency had treated the petitioner differently from anyone else[]")).  "'Absent such factual allegations, the [c]ourt cannot find that the first two *TRAC* factors weigh in Plaintiff[]s['] favor."  *Id.* (quoting *Ahmed*, 2022 WL 424967, at *5).  Consequently, as presently pled, the first and second *TRAC* factors favor Defendants.

### ii.   *TRAC* Factors Three and Five

The third and fifth *TRAC* factors concern whether "human health and welfare are at stake" and "the nature and extent of the interests prejudiced by delay[.]"  *TRAC*, 750 F.2 at 80.  These factors "often 'run together[.]'"  *Ramirez*, 594 F.Supp.3d at 94 (quoting *Milligan*, 502 F.Supp.3d at 319).  Plaintiffs have sufficiently alleged that their health and welfare are at stake because the delay in adjudicating their visa application has caused them to "put all of their plans, hopes, and dreams on hold" and "denied [them] the opportunity to share and celebrate countless precious occasions with one another."  (ECF No. 1 ¶ 105).  They allege that they "will continue to suffer financially,

psychologically, and emotionally indefinitely until they are reunited." (ECF No. 1 ¶ 183). The facts alleged as to factors three and five therefore favor Plaintiffs. *See, e.g.*, *Lee*, 2024 WL 639635, at *7 (finding that factors three and five favored plaintiffs who alleged that they have "missed memories, milestones, and the simple shared joys of daily family life that they cannot regain or recreate[]"); *Milligan*, 502 F.Supp.3d at 319 (finding that factors three and five favored plaintiffs who alleged that the delay forced them to "endure a prolonged and indefinite separation"); *Brzezinski*, 2021 WL 4191958, at *5 (finding that "the loss of consortium and general diminishment in quality of life for the engaged couple . . . tilt these factors somewhat in Plaintiff's favor).

### iii.  *TRAC* Factor Four

The fourth *TRAC* factor directs the court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority[.]" *TRAC*, 750 F.2d at 80. Courts often find this factor to "carr[y] the greatest weight" and have "'refused to grant relief, even [though] all the other factors considered in *TRAC* favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Milligan*, 502 F.Supp.3d at 319 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100) (alteration in original).

The relief Plaintiffs seek—an order compelling Defendants to adjudicate their K-1 visa petition—would move Plaintiffs to the front of the queue and delay other adjudications.  "'These sorts of judicial reorderings of agency priorities are inappropriate where the agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'"  *Begum*, 2022 WL 16575703, at *8 (quoting *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893-APM, 2022 WL 424967, at *6 (D.D.C. Feb. 11, 2022)). Courts have described visa processing capacity as a "zero-sum game" and therefore found the fourth *TRAC* factor to weigh in favor of the government because "granting [p]laintiff[s'] request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway*, 2022 WL 493082, at *4 (quoting *Khan*, 2021 WL 5356267, at *4); *see also Bagherian*, 442 F.Supp.3d at 96 (finding the fourth factor weighs favored the government); *Mirbaha*, 513 F.Supp.3d at 186 (same); *Mohammad*, 548 F.Supp.3d at 167 (same); *Jaraba*, 568 F.Supp.3d at 738-39 (same); *Milligan*, 502 F.Supp.3d at 319 (same); *Lee*, 2024 WL 639635, at *6 (same).

Plaintiffs argued in their motion for a temporary restraining order that Ms. Amani "has already waited nearly 3 years for the visa, which should be processed within 30 days, while tens of thousands of other applicants have inexplicably been processed to

conclusion[]" and criticized Defendants for their anticipated reliance on a "bald assertion that expediting Plaintiffs['] application would allow Plaintiff[s] to skip ahead in line of other individuals who are also awaiting a decision [on] their applications." (ECF No. 13-1, at 11-12). But it is Plaintiffs who must allege facts and not make bald assertions. They do not dispute-or allege any facts to contradict the assertion-that "granting [their] requested relief would have precisely the effect of reordering the current queue." *Begum*, 2022 WL 16575703, at *8. Thus, as presently pled, this factor weighs strongly in favor of Defendants.

### iv.  *TRAC* Factor Six

The sixth *TRAC* factor "'reminds courts that they need not find any impropriety . . . to hold that agency action is unreasonably delayed.'" *Dennis*, 2023 WL 4764576, at *9 (quoting *Meyou v. U.S. Dep't of State*, No. 21-cv-2806-JDB, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)). Plaintiffs do not allege that Defendants engaged in any impropriety. As pled, this factor is therefore neutral. *See, e.g.*, *Jaraba*, 568 F.Supp.3d at 739 (finding that "the final factor does not weigh in favor of either party[]" where plaintiffs did not allege impropriety) (citing *Brzezinski*, 2021 WL 4191958, at *6) ("In instances where a plaintiff makes no allegation of bad faith, courts often have . . . chosen not to apply the sixth *TRAC* factor at all.").

In sum, as presently pled, factors one, two, and four significantly favor Defendants, factors three and five slightly favor Plaintiffs, and factor six is neutral.  A court can assess the *TRAC* factors when deciding a motion to dismiss claims alleging unreasonable delay of agency action "if the 'record contains enough facts to evaluate [them]' at this stage." *Brzezinski*, 2021 WL 4191958, at *4 (quoting *Sarlak*, 2020 WL 3082018, at *5). Plaintiffs have failed to allege facts demonstrating that Defendants' current 17-month delay in processing Ms. Amani's visa petition is unreasonable.  Particularly persuasive are the considerations that "'[t]here is no congressional[ly] imposed timeline' for processing K-1 visa applications[,]" *Mohammad*, 548 F.Supp.3d at 165 (quoting *Bagherian*, 442 F.Supp.3d at 95), and that "granting relief to [P]laintiffs would do nothing more than allow them to jump ahead in the line of other individuals waiting for the Government to take action on their visa applications[,]" *Murway*, 2022 WL 493082, at *5.  That said, Defendants' delay "may not be considered reasonable indefinitely, at least in the context of a motion to dismiss." *Brzezinski*, 2021 WL 4191958, at *6. Thus, Count Four will be dismissed.

### b. Count Two: Unlawfully Withheld Ms. Amani's Visa Application

Plaintiffs allege that Defendants unlawfully withheld Ms. Amani's visa application under 5 U.S.C. § 706(2).  (ECF No. 1 ¶¶ 147-162).  They claim that the APA authorizes courts to compel

agency action for failures to act that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" including the unlawful withholding of the adjudication of Ms. Amani's visa application. (*Id.* ¶¶ 149-152).

Judge Friedrich of the United States District Court for the District of Columbia addressed the same claim for unlawful withholding of a K-1 visa application in *Lee v. Blinken*:

> [B]y the APA's plain text, a claim for "agency action unlawfully withheld or unreasonably delayed" arises under § 706(1), not § 706(2)(A). And the plaintiffs fail to state a claim under § 706(1) for the reasons discussed in Section III.C, *supra* [holding that Defendants' delay in adjudicating a K-1 visa was not unreasonable]. Even assuming the plaintiffs intended to plead a § 706(2)(A) claim, "[w]hen review is sought 'under [a] general review provision[ ] of the APA,' like section 706(2)(A), 'the agency action in question must be final agency action.'" *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). Here, however, the plaintiffs concede that they "have yet to receive a final adjudication of their visa application," Pet. ¶ 3, and they rely heavily on the fact "there has been no final decision" in their opposition brief, Opp'n at 14. As such, they fail to allege a crucial element under § 706(2)(A), dooming their claim.

*Lee*, 2024 WL 639635, at *7. Plaintiffs here similarly acknowledge that they have yet to receive a final adjudication of Ms. Amani's visa application. (ECF No. 1 ¶ 3). This court finds Judge

Friedrich's reasoning logical and persuasive.  Accordingly, Count Two will be dismissed for failure to state a claim.

### c. Count Three: Unlawfully Withheld a Mandatory Entitlement

Plaintiffs allege that Defendants unlawfully withheld a mandatory entitlement owed to them under 5 U.S.C. § 706(1), which grants courts the ability to "compel agency action unlawfully withheld."  (ECF No. 1 ¶¶ 164-165) (quoting 5 U.S.C. § 706(1)). They claim that §§ 1202(b) and 1202(d) of the INA "impose[] a mandatory non-ministerial duty on consular officers to review, adjudicate, and issue fiancé visas[]" and 22 C.F.R. § 42.81(a) imposes a "mandatory and affirmative duty to interview immigrant visa applicants and adjudicate a properly filed immigrant visa application."  (*Id.* ¶¶ 168-170).  The *Lee* court addressed an unlawful withholding claim as well:

> [T]he plaintiffs fail to state a distinct "withholding" claim under 5 U.S.C. § 706(1). *See* Pet. ¶¶ 159-170.  The plaintiffs contend the defendants "owe [them] a nondiscretionary, ministerial duty to act upon the visa application," and the defendants are thus "unlawfully withholding discrete action they are required to take within the temporal limits imposed by statute and the express intent of Congress." *Id.* ¶¶ 168, 170.  As pleaded, the plaintiffs' "unlawfully withheld" claim sounds in "unreasonabl[e] delay[ ]," and the plaintiffs fail, in any respect, to "distinguish[ ] between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)." *Tate* [*v. Pompeo*], 513 F.Supp.3d [132,] 147 n.6 [(D.D.C. 2001), *dismissed sub nom. Charlotte Louise Tate, et al., Appellees*

> *v. Antony J. Blinken, Sec'y of the U.S. Dep't of State, et al., Appellants*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021)]. The Court's analysis in Section III.C "of plaintiffs' claim that agency action was unlawfully delayed therefore addresses the entirety of plaintiffs' § 706(1) claims to compel agency action." *Id.*

*Lee*, 2024 WL 639635, at *7.  The same is true here.  Count Three will therefore be dismissed for failure to state a claim.

### d. Count One: Mandamus

Plaintiffs also seek relief under the Mandamus Act, 28 U.S.C. § 1361.  They contend that it provides the court jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  (ECF No. 1 ¶ 129).  They allege that the INA and relevant regulations impose on Defendants a duty to adjudicate Ms. Amani's visa application timely.  (*Id.* ¶ 134).

Courts have determined that they lack jurisdiction to decide claims for mandamus relief which would be duplicative of their cause of action under the APA.  *See, e.g.*, *Jaraba*, 568 F.Supp.3d at 731.  Here, Plaintiffs' mandamus claim "depends on the delay being unreasonable under the APA."  *Khan*, 2021 WL 5356267, at *4.  Indeed, "'[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act[.]'"  *Bagherian*, 442 F.Supp.3d at 96 (quoting *Skalka*, 246 F.Supp.3d at 152).  Because the court has determined under the APA

that Plaintiffs have failed to allege facts demonstrating that the current 17-month delay is unreasonable, the "conclusion applies with equal force to [Plaintiffs'] mandamus claim." *Id.; see also Penn*, 2022 WL 910525, at *7 (holding that "because [plaintiffs'] APA claim fails, so too does their claim for mandamus relief[]"); *Murway*, 2022 WL 493082, at *2 n.1 (noting that "disposition of the APA claim also resolves the mandamus claim[]").  Additionally, "the D.C. Circuit has instructed that courts should 'reject[ ] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants.'" *Bagherian*, 442 F.Supp.3d at 96 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016)).  Accordingly, Plaintiffs' mandamus claim also fails.

### D. Motion for Temporary Restraining Order

Because the court will grant Defendants' motion to dismiss, Plaintiffs' motion for temporary restraining order will be denied. Plaintiffs have not stated a claim upon which relief can be granted.  Therefore, they have not shown a likelihood of success on the merits.  Plaintiffs must satisfy all four factors—likelihood of success on the merits, irreparable harm, balance of equities, and public interest—to be entitled to a temporary restraining order. *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) ("Each of these four

requirements must be satisfied."); *see also Bauer v. Elrich*, 463 F.Supp.3d 606, 610 (D.Md. 2020).   Because Plaintiffs cannot establish a likelihood of success on the merits, the court need not consider the other three factors.   Accordingly, Plaintiffs' motion for temporary restraining order will be denied.

## III. Conclusion

For the foregoing reasons, (1) Defendants' motion for extension of time to respond to the complaint, (ECF No. 11), will be granted; (2) Plaintiffs' motion for temporary restraining order, (ECF No. 13), will be denied; (3) Defendants motion to dismiss, (ECF No. 14), will be denied in part and granted in part; and (4) Defendants' motion for extension of time to file their reply to Plaintiffs' opposition to their motion to dismiss, (ECF No. 16), will be denied as moot.   A separate order will follow.

/s/
————————————————
DEBORAH K. CHASANOW
United States District Judge
